**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 17, 2024

S24Y0016. IN THE MATTER OF SHARON L. BARKSDALE.

PER CURIAM.

This disciplinary matter is before the Court on Special Master William T. Davis's report and recommendation. The Special Master recommends that this Court accept the Petition for Voluntary Discipline filed by Sharon L. Barksdale (State Bar No. 037981) in response to the Bar's formal complaint, see Bar Rule 4-227 (c), and that we impose a public reprimand for Barksdale's admitted violations of Rules 1.3 and 1.4 of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d).[1] We agree that a public reprimand is appropriate under the circumstances of this case.

In response to the Bar's formal complaint against her, Barksdale filed a petition for voluntary discipline that was supported by the Bar.

---

[1] The maximum sanction for a single violation of Rule 1.3 is disbarment, while the maximum sanction for a single violation of Rule 1.4 is a public reprimand.

The Special Master recounted that Barksdale admitted the following facts in her petition.

A client retained Barksdale's services to defend against a complaint for modification of child custody and support filed by the child's father. During litigation, the superior court appointed a guardian ad litem. A final hearing was held on July 22, 2019, during which the court heard evidence of the father instigating unsubstantiated investigations by the Georgia Division of Family and Children Services against the client, starting a smear campaign against the client and her boyfriend with the client's employer, and behaving abusively towards the client in telephone calls. The judge also spoke to the child privately in chambers. The court found that there was no evidence of a material change in circumstances to warrant a change in custody from the client to the father, and that the client was adequately taking care of the child. The court then ordered that the summer visitation schedule would be modified so that the client would have the first three weeks and the final week, and the father would have the four weeks in the middle; that the father would have visitation over fall and spring breaks; that the father would pick the child up in Georgia for visitation; and that the father would receive a $500 travel

deviation in his favor on the child support worksheet. The court directed Barksdale to prepare a proposed order and show it to opposing counsel before the court signed it.

Barksdale did not prepare the order as directed. In October 2019, the court's office emailed counsel for both parties, seeking an update on the proposed order. Barksdale did not respond to the email, but she later called the court's office to state that she was working on the order. However, Barksdale did not tell the client that she had failed to prepare and submit the order. The Special Master expressed concerns with Barksdale's "willful lack of communication with her client" and opined that "[w]hile a lawyer's discomfort in admitting a mistake to a client may warrant stress in the lawyer, it is no excuse for not explaining the full situation to the client."

In March 2020, the father moved to modify the court's oral order from the July 2019 hearing. The father's attorney sent service copies of the motion and a notice of hearing to Barksdale at an incorrect address. Thus, Barksdale never received service of the father's motion to modify or the notice of hearing. The court held the hearing on June 29, 2020.

Barksdale did not appear for the hearing or inform the client about it because she was unaware that it had been scheduled.

The trial court issued an order on the father's motion on July 6, 2020. In the order, the court noted that Barksdale had not submitted a proposed order, parenting plan, or child support worksheet memorializing the court's ruling from the July 2019 hearing. The court's July 2020 order was less beneficial to the client's interests than the July 2019 ruling had been, especially as to visitation. Among other things, the July 2020 order granted visitation to the father for every Thanksgiving and for the first half of Christmas Day, with the client receiving visitation only on the afternoon of Christmas Day in Virginia, and alternating visitation for spring, fall, and winter breaks. The order also directed that the exchange of visitation would occur at the father's residence in Virginia.

Neither Barksdale nor the client was aware of the July 2020 order until July 22, 2020, when the father told the client that the child would not be returning to Georgia but would stay in Virginia to attend school. The client then contacted Barksdale to ask what happened in the modification action. Barksdale told the client that she needed to "sleep

4

on it" to determine how to resolve the issue. She did not file a motion for new trial or a motion to set aside the July 2020 order. Up to this point, Barksdale still had not told the client that she failed to submit the proposed order in July 2019.

Barksdale admitted that she had no justifiable excuse for failing to submit the proposed order after the July 2019 hearing. Instead, she stated that it was because she was overwhelmed with other contested domestic matters and was struggling to keep up with her cases.

The Special Master made a few additional observations about Barksdale's case. He observed that Barksdale did not blame any other party for her actions; that she admitted that her inaction resulted in her abandonment of the client's matter; and that she was sincerely apologetic to the client for the negative impact her inactions had on the outcome of the case. The Special Master also noted that the client had retained Barksdale through a pre-paid legal service provided by the client's employer, to which the client paid premiums toward legal representation, and that the legal service paid the client's attorney fees pursuant to a fee arrangement between Barksdale and the legal service. The only legal fees Barksdale received were $30 from the client for an office visit, and $1,500

5

for representing the client in the modification action, which was paid by the legal service. The only expenses paid by the client were a $750 guardian ad litem fee and $326.35 for a copy of the client's deposition transcript.[2]

Applying the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), the Special Master examined (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See *In the Matter of Morse*, 265 Ga. 353, 354 (2) (456 SE2d 52) (1995). Barksdale admitted to violating Rule 1.3[3] by failing to promptly prepare and present the proposed order, parenting plan, and child support worksheet as directed by the court on July 22, 2019; failing to communicate with the client about her delay in presenting the proposed order to the court; and failing to collaterally attack the July 6, 2020 order

---

[2] Barksdale noted in her petition for voluntary discipline that she – not the client – paid for the transcript. But because she could not recall whether the client reimbursed her, her petition stated out of an abundance of caution that the client paid the expense.

[3] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

after receiving notice of the issues caused by the father's counsel mailing service copies to an incorrect address. Barksdale admitted to violating Rule 1.4[4] by not promptly informing the client of her failure to provide the proposed order to the court or her failure to respond to the October 2019 email from the court; by failing to keep the client reasonably informed about the status of her case; by failing to promptly respond to the client's requests for information after the discovery of the July 6, 2020 order; and by failing to promptly inform the client that she did not prepare a collateral attack of the July 6, 2020 order.

Importantly, however, the Special Master found that Barksdale's conduct was not intentional. To the contrary, he found that Barksdale

---

[4] Rule 1.4 provides in relevant part that

(a) A lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (l), is required by these rules;
>
> . . .
>
> (3) keep the client reasonably informed about the status of the matter; [and]
>
> (4) promptly comply with reasonable requests for information[.]

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"appears to have been overwhelmed by her case load at the time that these violations occurred, and she does not appear to have intended to abandon [the client's] case." As to Barksdale's failure to prepare the proposed order after the July 2019 hearing, the Special Master credited Barksdale's explanation that after she obtained a favorable ruling for her client, she intended to finalize the proposed order, but "inadvertently" let it "slip through the cracks" while she attended to other matters. The Special Master likewise found that Barksdale was "overwhelmed" when she told the court in October 2019 that she was "working" on the proposed order. And the Special Master observed that Barksdale was not properly served with the father's motion to modify or the notice of hearing. The Special Master found that "all of the above factors had to collide in just the right way for [the trial court] to issue the new order that was less favorable" to the client. He noted that Barksdale had changed her practice to prevent a similar "perfect storm" from affecting her and her clients in the future.

Turning to the question of discipline, the Special Master noted that "[r]eprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes

injury or potential injury to a client." ABA Standard 4.43. The Special Master found that those conditions were present here and concluded that the presumptive penalty was a public reprimand.

The Special Master then considered factors in aggravation and mitigation. He found in aggravation that Barksdale had substantial experience in the practice of law and that her client was a vulnerable victim. See ABA Standard 9.22 (h) – (i). But in mitigation, the Special Master found that Barksdale had no prior disciplinary history and had exhibited sincere remorse, see ABA Standard 9.32 (a), (l), and that she had taken steps to change her practice so that what happened here would not happen again. The Special Master commented that he was "impressed by [Barksdale's] willingness to accept full fault and blame for the issues that gave rise to [the client's] complaint."

The Special Master briefly considered the question of restitution. See *In the Matter of Sneed*, 314 Ga. 506, 510 n.2 (877 SE2d 608) (2022) (noting that the issue of restitution is important to this Court's review of attorney disciplinary matters). The Special Master acknowledged that Barksdale had not offered or made restitution to the client. But he reasoned that it was unclear how she could do so, given that her attorney

9

fees were paid by a legal service rather than by the client herself; it would not satisfy the client if Barksdale were ordered to make restitution to the legal service; and no financial contribution from Barksdale would reverse the July 6, 2020 order that deprived the client of the previously ordered custody arrangement.

Considering all of the above, the Special Master recommended that the Court accept Barksdale's petition for voluntary discipline and impose a public reprimand. See *In the Matter of Graham*, 292 Ga. 901 (742 SE2d 735) (2013) (imposing public reprimand for lawyer who violated Rules 1.4 and 3.2; lawyer had no prior discipline and had made restitution); *In the Matter of Leslie*, 300 Ga. 774 (798 SE2d 221) (2017) (imposing review panel reprimand for lawyer who violated Rules 1.3, 1.4, and 3.2; evidence indicated lawyer had no prior discipline, had depression following heart surgery, and had significantly improved his law practice management); *In the Matter of Gantt*, 302 Ga. 3 (804 SE2d 336) (2017) (imposing public reprimand for lawyer who violated Rules 1.2, 1.3, and 1.4; significant mitigating factors and no aggravating factors were present).

Having reviewed the record, we agree with the Special Master that a public reprimand is an appropriate sanction in this matter. See *In the*

*Matter of Jordan*, 305 Ga. 35 (823 SE2d 257) (2019) (accepting special master's recommendation of public reprimand based on petition for voluntary discipline when lawyer violated Rules 1.2, 1.3, 1.4, and 1.16). In reaching this conclusion, we accept the Special Master's finding that Barksdale's conduct was negligent rather than knowing or intentional and that several mitigating factors apply. Accordingly, we accept the petition for voluntary discipline and direct that Sharon L. Barksdale receive a public reprimand in accordance with Bar Rules 4-102 (b) (3) and 4-220 (c) for her admitted violations of Rules 1.3 and 1.4.

*Petition for voluntary discipline accepted. Public reprimand. All the Justices concur.*