**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: July 22, 2025

S25Y0879.  IN THE MATTER OF JUSTIN ALLEN CHIN.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Samuel Jeffrey Rusbridge and recommended that Justin Allen Chin (State Bar No. 886274) be disbarred for his conduct in connection with eight separate client matters. The formal complaints upon which these disciplinary proceedings were based alleged that Chin, who has been a member of the State Bar since 2012, violated Rules 1.2 (a), 1.3, 1.4 (a), 1.5 (a), 1.5 (b), 1.8 (a), 1.8 (b), 1.8 (j), 1.15 (I) (a), 1.15 (I) (c), 1.15 (I) (d), 1.15 (II) (a), 1.15 (II) (b), 1.16 (c), 1.16 (d), 3.2, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102

(d). The maximum penalty for a violation of Rules 1.4, 1.5 (a), 1.5 (b), 1.8 (a), 1.8 (j), 1.16 (c), 1.16 (d), and 3.2 is a public reprimand. The maximum penalty for a violation of Rules 1.2 (a), 1.3, 1.8 (b), 1.15 (I) (a), 1.15 (I) (c), 1.15 (I) (d), 1.15 (II) (a), 1.15 (II) (b), and 8.4 (a) (4) is disbarment. Although Chin acknowledged service of the formal complaints, he failed to timely file his answers, and the Special Master granted the State Bar's motion for default, such that the Rule violations charged were deemed admitted.

Following an evidentiary hearing on aggravating and mitigating circumstances, the Special Master determined that most of Chin's GRPC violations were due to negligence and that Chin's conduct did not cause actual injury to his clients, and he recommended that Chin receive an 18-month suspension from the practice of law. The State Bar requested review by the Review Board, which concluded that the Special Master's determinations as to Chin's mental state and the injuries his misconduct caused were clearly erroneous and unsupported by the record. Rather, the Review Board determined that Chin acted knowingly in most

2

instances; that Chin caused actual, or the potential for, injury to his clients; that additional aggravating factors existed; and that disbarment was the appropriate sanction.

Chin has filed in this Court exceptions to the Review Board's report and recommendation, contending that the Special Master properly assessed his mental state and the lack of injury to his clients, that one of the aggravating factors the Review Board determined applied was not applicable, and that an 18-month suspension is appropriate. In response, the State Bar argues that the Review Board correctly concluded that Chin's actions were knowing, that Chin's conduct caused actual, or the potential for, injury to his clients, that additional aggravating factors applied, and that disbarment is appropriate.

Based on our review of the record, we agree with the Review Board that the Special Master clearly erred in his determinations as to Chin's mental state and the injury caused by his conduct because those findings were unsupported by the record. Further, we agree

3

with the Review Board that disbarment is the appropriate sanction for Chin's multiple GRPC violations.

1. Procedural History

Between May 31, 2023, and June 5, 2023, the State Bar filed eight formal complaints charging Chin with violations of Rules 1.2 (a) (a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and shall consult with the client as to the means by which they are to be pursued); 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 1.4 (a) (a lawyer shall keep the client reasonably informed about the status of the matter and promptly comply with reasonable requests for information); 1.5 (a) (a lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses); 1.5 (b) (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation); 1.8 (a) (a lawyer shall not

4

knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client); 1.8 (b) (a lawyer shall not use information gained in the professional relationship with a client to the disadvantage of the client); 1.8 (j) (a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client); 1.15 (I) (a) (a lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property); 1.15 (I) (c) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person); 1.15 (I) (d) (when in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and a client or a third person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests); 1.15 (II) (a) (all funds held by a lawyer for a client shall be deposited in and administered from a trust account); 1.15 (II) (b) (no personal funds shall ever be deposited in a

lawyer's trust account, except that unearned attorney fees may be so held until the same are earned); 1.16 (c) (when a lawyer withdraws it shall be done in compliance with applicable laws and Rules); 1.16 (d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests and surrender papers and property to which the client is entitled and refund any advance payment of a fee that has not been earned); 3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); and 8.4 (a) (4) (it shall be a violation of the Rules for a lawyer to engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation). Chin acknowledged service of the complaints, but failed to file timely answers by July 23, 2023. On August 17, 2023, the State Bar filed a motion for default pursuant to Bar Rule 4-212 (a). On September 22, 2023, Chin's attorney entered her appearance, and on October 3, 2023, Chin filed a response in opposition to the State Bar's motion for default, requesting that the Special Master permit a ten-day extension for Chin to file his

6

answers. Following a hearing, the Special Master granted the State Bar's motion for default, finding that Chin's request for an extension was not filed within 30 days of service as required by Rule 4-212, he never moved to open default, and he failed to provide any facts which would provide a basis for opening default.[1] The Special Master then ordered an evidentiary hearing on the aggravating and mitigating circumstances, after which he submitted his report and recommendation.

2. Evidentiary Hearing

At the evidentiary hearing, Chin testified that he had substantial experience in practicing law, that he had worked in family law for 12 years, and that he was the sole practitioner handling the eight cases at issue and had full control of the IOLTA and operating accounts in these matters. Chin further testified that he represented the clients in these discipline matters in divorce proceedings, some of which involved custody disputes; that, in the

---

[1] Chin does not challenge the Special Master's grant of default.

majority of these cases, there was a fee dispute and several clients had to file arbitration claims to get a resolution on the dispute; that he filed liens against his clients in four of these cases, all of which were either struck down by arbitrators or released by Chin after entering into settlement agreements; that, in several cases, he received proceeds from sales of marital property and did not promptly disburse the funds owed to his clients; and, in at least one matter, his client has still not received any funds from the sale of her marital property. Moreover, Chin testified that he is now aware that he must provide his clients with regular invoices, and admitted that at the time he violated these Rules, he was "more about money than helping people."

Five of Chin's former clients testified at the hearing, as well as the ex-husband of one of his clients. These clients described the emotional and financial impact of Chin's misconduct, with several explaining that they had to pursue arbitration in order to receive from Chin the funds to which they were entitled, hire new attorneys for their divorce actions, and pay additional attorney fees. Further,

several clients stated that they believed Chin's misconduct delayed the resolution of their divorces. One client testified that she initiated the divorce proceeding because she was in an abusive marriage, that the proceeds from the sale of her marital home were disbursed to Chin for later distribution, and that she has yet to receive any of these funds.

3. Special Master's Report and Recommendation

(a) Factual Findings

Based on the factual allegations in the State Bar's complaint—which were deemed admitted by virtue of Chin's default—the Special Master recounted that Chin represented the client in State Disciplinary Board Docket ("SDBD") No. 7611 in a divorce action. On August 7, 2020, the opposing party sent discovery requests to Chin, but he failed to properly serve responses to the requests on behalf of the client. Chin eventually provided partial responses after receiving a "Rule 6.4 letter," but he failed to respond to a subsequent letter and the opposing party filed a motion to compel discovery. Chin failed to respond to the motion and failed to inform the client

9

about the motion. On December 4, 2020, the opposing party filed a motion to dismiss and, in the alternative, a motion to compel. Chin failed to respond to the second motion or inform his client about this motion. And, although the client attempted to contact Chin for updates on her case multiple times between November 2020 and January 2021, he failed to communicate with her. On February 12, 2021, the court placed the client's case on a hearing calendar for March 1, 2021. Chin did not inform the client about the hearing until the morning it was scheduled. Chin and the client appeared for the scheduled hearing, at which the court granted the motion to compel and awarded attorney fees against Chin personally. On March 3, 2021, Chin filed a motion to withdraw from the client's case, without informing her of his intent to do so. On July 6, 2021, the opposing party filed a motion for sanctions due to Chin's failure to provide the discovery requests and to pay the attorney fees as ordered by the court. Chin did not respond or inform the client about the motion, and ultimately the court allowed him to withdraw from representing the client. Subsequently, the client filed a Petition for Fee

Arbitration with the State Bar and in June 2022, the client and Chin entered into a settlement agreement, pursuant to which Chin paid the client $2,900 and released her from any financial obligations to him for legal services.

For SDBD No. 7612, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action. In September 2018, the client's marital property was sold, and a portion of the proceeds was deposited into Chin's trust account for later distribution. After the final court order directing distribution, Chin transferred the funds due to the opposing party from his trust account to his operating account and then disbursed them. Per the final order, his client was to receive $29,837.10 from the proceeds. However, Chin sent a letter to the client informing her that he was applying the funds to her outstanding legal fees. Chin's total invoice for his representation of the client from March 2018 to September 2019 was $31,124.80. This invoice contained duplicative billing, and the client contacted Chin multiple times to discuss his fees and the distribution of the proceeds. Chin failed to respond to the client's

11

attempts to contact him, failed to provide her with an accounting of the funds in his trust account despite her requests, and did not disburse any funds to the client as he had disbursed them to himself in payment of her invoice.

For SDBD No. 7613, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action from April 30, 2020 to June 5, 2020, and September 30, 2020 to January 8, 2021. On October 2, 2020, Chin failed to attend a court-scheduled status conference and falsely told the client that the status conference was cancelled. Chin also failed to complete necessary discovery. During Chin's four-and-a-half months of representation, the client paid Chin $4,700 in attorney fees. The client made repeated requests for invoices and a written agreement, but Chin failed to provide any billing statements or invoices until February 2021, at which point the client had terminated his representation. This total invoice was for $15,410 and incorrectly stated that the client had previously paid Chin only $3,800. The invoice also contained duplicative billing and included fees for work

performed after the client had terminated Chin's representation and retained another attorney. Subsequently, Chin filed a lien against the client for $11,610 for unpaid legal fees. The client filed a Petition for Fee Arbitration with the State Bar and the parties entered a settlement agreement, pursuant to which Chin executed a cancellation and release of his lien, refunded $1,000 to the client, and agreed to release the client from any financial obligation to him for legal services.

For SDBD No. 7614, the Special Master recounted that Chin represented the client in this disciplinary matter in a modification and contempt action. The client had difficulty communicating with Chin, and Chin failed to update the client on the status of the case. On July 9, 2021, the client informed Chin that he was terminating the representation. On July 12, 2021, the court entered an order requiring the parties to conduct mediation within 45 days. Chin failed to inform the client about the order, and on September 24, 2021, filed a motion to withdraw as counsel. Subsequently, the client filed a Petition for Fee Arbitration with the State Bar, and in May

2022, Chin and the client entered a settlement agreement, pursuant to which Chin agreed to refund the client $1,650 and to complete and obtain a full and final modification for the client within three months for no further charges.

For SDBD No. 7615, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action. Pursuant to the engagement letter, the client was responsible for a $2,500 initial retainer and a payment of $300 per month. The court awarded the client $15,000 for attorney fees and to pay a forensic accountant, which funds Chin deposited into his IOLTA account. Chin failed to use the funds to pay the forensic accountant and instead applied the funds to pay his invoices. Subsequently, the client filed a Petition for Fee Arbitration with the State Bar, and the arbitrators determined that Chin was entitled to keep $12,835.65 of the $15,000. On June 3, 2021, the client terminated Chin's representation and requested her case file, itemized billing invoices, and a refund of unearned fees. Chin did not respond, and the client made similar requests on June 7, July 9, July 12, July 20, and July

14

26, 2021. Chin failed to respond to these requests and, instead, filed a lien against the client for her remaining legal fees. The lien was later removed by court order, upon the court finding that Chin did not recover property for the client that would justify the lien.

For SDBD No. 7703, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action. During the representation, the proceeds from the sale of the client's marital home were transferred to Chin, who deposited the funds into his operating account instead of his IOLTA account. The parties subsequently reconciled, and the client requested that Chin dismiss the divorce action. Chin did not dismiss the action until after the client terminated his representation. The parties then executed a reconciliation agreement, pursuant to which Chin was required to disburse $46,430.88 of the proceeds from the sale to the client. Chin failed to disburse the funds and failed to respond to the client's multiple attempts to contact him. On February 20, 2020, Chin transferred $46,430.88 to his operating account for the client's legal fees, but did not inform the client that he was retaining the client's

portion of the funds as payment. Chin also failed to provide the client with an invoice or billing statement prior to transferring the funds to his operating account and failed to provide an accounting of the funds in his possession. Chin then provided a total invoice for $52,459.21 for his 14 months of representation, which contained duplicative billing and billing for work performed when Chin was not representing the client. Subsequently, the client filed a fee arbitration proceeding against Chin. Prior to the arbitration hearing, the parties entered a settlement agreement, pursuant to which Chin agreed to pay the client $32,500.

For SDBD No. 7704, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action. The court scheduled a final hearing on the matter and Chin failed to consult with the client prior to or during the hearing. Further, Chin was unprepared for the hearing and attempted to relitigate issues that had already been determined. The court directed Chin to prepare a draft final judgment and divorce decree for the court's consideration, and Chin told the client that he would send her a

16

draft for approval before submitting it to the court. However, Chin submitted the draft before sending it to the client and without obtaining the client's approval, despite her requests for a copy of the draft. On November 9, 2021, the court entered the final judgment and decree that Chin had prepared. Pursuant to this judgment, the client was required to refinance her home within six months and pay her ex-husband $61,000 out of the refinance, and was responsible for $11,871.32 incurred from the parties' 2017 tax return. On November 12, 2021, Chin and the client had a meeting by videoconference, during which the client asked him to correct certain errors in the drafted final judgment. Chin refused to make any changes, as he had already submitted it to the court and the court had already entered the judgment, and he requested that the client pay him additional funds. The client terminated Chin's representation and requested that he provide her with her case file. Chin failed to return the file. On November 22, 2021, Chin placed a $7,500 lien on the marital home for legal services, which the client discovered after she had listed the home for sale, as required by the

court order. The client then requested an invoice from Chin for his one month of representation. Although Chin failed to provide the client with an invoice or billing statement, she was able to obtain a copy of the invoice from her closing attorney, which totaled $14,663.50 and stated that the client had a balance of $13,163.50. The invoice contained charges for work that Chin did not perform, including charges from before he was retained as counsel, and duplicative billing. Subsequently, the client filed an arbitration claim and, although Chin agreed to participate in the arbitration, he did not appear at the arbitration hearing or request a continuance. On February 28, 2022, the arbitrator entered an award in the client's favor, finding that Chin violated his duty of care to the client, that his invoice was not credible, that the client did not owe Chin anything, that Chin's lien violated the parties' agreement, that the lien was null and void, and that Chin was required to provide the client her file. On March 3, 2022, Chin executed a cancellation of the lien.

For SDBD No. 7704, the Special Master recounted that Chin represented the client in this disciplinary matter in a divorce action. The client sold the marital residence and, on April 13, 2021, $269,982.76 in proceeds from the sale were deposited into Chin's IOLTA account. Between April and December 2021, Chin withdrew for his attorney fees $118,246.70 of the funds from the sale. Although Chin was required to hold $202,749.02 for the client's ex-husband and other third parties, by the end of December 2021, the balance from the proceeds was $151,736.06. On March 7, 2022, the court entered a final judgment and decree of divorce, which provided how Chin was to disburse the funds and ordered that he make the disbursements within five days. Chin did not disburse the funds owed to the client's ex-husband until March 15, 2022, at which time he transferred funds from his operating account to cover the shortfall in his IOLTA account.

(b)    Rule Violations

Pursuant to Chin's default, the Special Maser concluded that, in SDBD No. 7611, Chin violated Rules 1.2 (a) by failing to

19

communicate with the client about her case and consult with her about the scope and objections of his representation; 1.3 by failing to act promptly and diligently in his representation; 1.4 (a) by failing to keep the client informed about her case and failing to respond to her requests for information; 1.6 (d) by failing to notify the client that he was withdrawing from representation and failing to refund unearned fees; and 3.2 by failing to respond to discovery requests and court orders.

In SDBD No. 7612, the Special Master found that Chin violated Rules 1.4 (a) by failing to respond to the client's communications and requests for an accounting of the funds; 1.5 (a) by charging the client an unreasonable fee; 1.15 (I) (c) and (d) by failing to promptly deliver the funds from the sale of the marital home and applying the funds to his bills; and 1.15 (II) (a) by disbursing funds owed from his operating account instead of his IOLTA account.

In SDBD No. 7613, the Special Master concluded that Chin violated Rules 1.3 by failing to act promptly and diligently in his representation of the client; 1.4 (a) by failing to inform the client

about the status conference and telling the client that the conference was cancelled; 1.5 (a) by charging an unreasonable fee; and 3.2 by failing to conduct necessary discovery.

In SDBD No. 7614, the Special Master concluded that Chin violated Rules 1.4 (a) by failing to communicate with the client and keep him updated on the status of the case; and 1.16 (c) and (d) by failing to properly withdraw from representation and failing to refund unearned fees.

In SDBD No. 7615, the Special Master concluded that Chin violated Rules 1.3 by failing to pay the forensic accountant from the fees awarded by the court; 1.4 (a) by failing to respond to the client's communications and request for invoices and her case file; 1.5 (a) by charging an unreasonable fee; and 1.15 (I) (c) and (d) by failing to provide an accounting and applying the funds awarded by the court for the forensic accountant to his bills.

In SDBD No. 7703, the Special Master concluded that Chin violated Rules 1.2 (a) by failing to consult with the client about the disbursement of funds; 1.3 by failing to act promptly and diligently

in his representation; 1.4 (a) by failing to communicate with the client and respond to his request for information regarding disbursement of the funds and closure of the case; 1.5 (a) by charging an unreasonable fee; 1.15 (I) (a) and (d) by failing to hold funds owed to a client separate from his own funds; and 1.15 (II) (a) by failing to administer client funds from a trust account.

In SDBD No. 7704, the Special Master concluded that Chin violated Rules 1.2 (a) by failing to consult with the client about the scope and objective of his representation and failing to provide her with a draft of the final divorce decree before submitting it to the court; 1.3 by failing to act promptly and diligently in his representation of the client; 1.4 (a) by failing to communicate with the client and respond to her requests for a draft of the divorce decree and a billing statement; 1.5 (a) and (b) by charging an unreasonable fee and failing to provide an invoice prior to filing a lien on the client's property; 1.8 (a), (b), and (j) and 8.4 (a) by filing a lien on his client's property without providing notice to the client;

and 1.16 (d) by failing to return the client's file after she terminated his representation.

In SDBD No. 7705, the Special Master concluded that Chin violated Rules 1.15 (I) (a) by failing to safeguard fiduciary funds, failing to hold fiduciary funds separate from his own funds, and failing to maintain complete records of such funds; 1.15 (I) (c) by failing to promptly deliver the client's ex-husband's funds in his possession; 1.15 (II) (a) by failing to administer fiduciary funds from a trust account; and 1.15 (II) (b) by commingling personal and fiduciary funds.

(c)     American Bar Association Standards

After discussing his factual findings and conclusions of law as to the Rules violated, the Special Master cited the framework set out in the *ABA Standards for Imposing Lawyer Sanctions* (1992) ("ABA Standards"), which provide that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or

mitigating factors." See *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996). The Special Master then proceeded to determine Chin's mental state at the time he committed these violations, and determined that—with the exception of his violations of Rules 1.15 (I) (c) and (d), 1.15 (II) (a) and (b), and 1.3 in connection with SDBD No. 7615—Chin's mental state for all other violations was either negligent or, alternatively, that Chin's mental state was "not shown to be intentional or knowing." In assessing the potential or actual injury caused by Chin's misconduct, the Special Master determined that Chin's violations regarding charging unreasonable fees and using client funds to pay them, failing to respond to discovery requests and attend hearings, and not paying the forensic accountant in SDBD No. 7615 had the potential to cause injury to his clients, but that in none of the eight matters did Chin's conduct cause actual injury.

The Special Master then determined that, in aggravation, Chin had a selfish motive, based on his "charging of unreasonable fees and resulting conduct"; displayed a pattern of misconduct, as he

24

engaged in a pattern of neglect, overbilling, and failure to properly handle funds in his clients' cases; and committed multiple offenses, as he was charged with multiple Rule violations in eight separate client matters. See ABA Standard 9.22 (b), (c), and (d). The Special Master further determined that Chin's lack of a prior disciplinary record was "the sole mitigating factor in these matters." See ABA Standard 9.32 (a).

(d)    Recommended Discipline

The Special Master then concluded that an 18-month suspension from the practice of law, with the condition that, prior to reinstatement, Chin complete the State Bar's Law Practice Management Program, was the appropriate sanction. In doing so, he cited ABA Standard 4.12, which provides that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."

4. The Review Board's Report and Recommendation

The State Bar filed exceptions before the Review Board to the Special Master's report and recommendation. The State Bar argued that the Special Master erred in determining that Chin's mental state was negligent for the majority of his Rule violations; that the Special Master erred in determining that Chin's violations did not cause actual injury to his clients; that the Special Master erred in failing to apply as aggravating factors Standards 9.22 (h) (vulnerability of the victim) and 9.22 (i) (substantial experience in the practice of law); and that disbarment is the appropriate sanction. Upon its review, the Review Board concluded that the Special Master's factual findings as to what occurred in the eight disciplinary cases were supported by the record and his conclusions of law as to the Rules violated were correct, but that the Special Master's analysis of the ABA factors was "lacking, if not absent, in most of the analysis" and that his determinations as to Chin's mental state and the injury his conduct caused was clear error and unsupported by the record. The Review Board then concluded that Chin's mental state was, at a minimum, knowing; that his violations

26

caused actual injury to his clients; that the two additional aggravating factors presented by the State Bar applied; and that disbarment is the appropriate sanction in this case.

5. The Parties' Arguments before this Court

Chin filed exceptions in this Court to the Review Board's report and recommendation, arguing that the Special Master properly analyzed Chin's mental state and determined that it was one of negligence in most instances; that the Special Master properly assessed the potential or actual injury caused by Chin's actions and determined that Chin's violations did not cause any actual injury to his clients; that ABA Standard 9.22 (h) should not be considered in aggravation; and that the Special Master's recommendation of an 18-month suspension is appropriate. In response, the State Bar maintains that the Special Master's determinations as to Chin's mental state and the injury caused by his violations were clear error and unsupported by the record, and that the Review Board's recommendation of disbarment is appropriate.

6. Analysis

(a)    Standard of Review

We note at the outset that "because this Court recognizes that the special master is in the best position to determine the witnesses' credibility, it *generally* defers to the factual findings and credibility determinations made by the special master unless those findings or determinations are clearly erroneous." *In the Matter of Tuggle*, 317 Ga. 255, 258 (2) (892 SE2d 761) (2023) (emphasis in original). This Court will not, however, defer to clearly erroneous fact findings that are unsupported by the record. And we afford no such deference to the conclusions of law made by the Special Master or the Review Board, reviewing de novo what rules were violated and what level of discipline is appropriate. *Tuggle*, 317 Ga. at 258 (2).

(b)    ABA Standards

We agree with the Special Master's factual findings and conclusions of law as to the Rules violated, all of which were deemed admitted by virtue of Chin's default. However, we agree with the Review Board and the State Bar that the Special Master's analysis of the ABA Standards is lacking and that the Special Master clearly

erred in his determinations as to Chin's mental state and the injuries caused to his clients by his violations of the GRPC. While the framework in the ABA Standards is not controlling, it is "generally instructive as to the question of punishment." See *In the Matter of Cook*, 311 Ga. 206, 213 (3) (a) (857 SE2d 212) (2021). As mentioned above, this framework includes examining (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See ABA Standard 3.0.

*Duties Violated.* Although the Special Master omitted from his report and recommendation any analysis of the duties Chin violated through his GRPC violations, based on the record before us—which includes the Special Master's factual findings and conclusions of law—we determine that Chin violated several duties owed to his clients, including his duty of diligence, as prescribed in Rule 1.3; his duty of communication, as prescribed in Rule 1.4; his duty to avoid conflicts of interest, as prescribed in Rule 1.8; his duty to safeguard client property, as prescribed in Rule 1.15; his duties upon

29

termination of representation, as prescribed in Rule 1.16; and his duty of candor, as prescribed in Rule 8.4. See *Tuggle*, 317 Ga. at 273 (6) (b) (determining, upon review of the record, that attorney "violated his duties of communication, his duties upon termination of representation, and his obligation not to enter agreements conditioned on dismissal of a pending disciplinary complaint"). Additionally, Chin violated his duty owed to the public to maintain personal integrity by failing to timely disburse funds owed to an opposing party. See ABA Standard 5.1.

*Mental State.* Although non-binding, the ABA Standards define "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which is a deviation from the standard of care that a reasonable lawyer would exercise in the situation; "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result"; and "intent" as "the conscious objective or purpose to accomplish a particular result." ABA Standards, "Definitions."

The Special Master concluded that—with the exception of his violations of Rules 1.15 (I) (c) and (d), 1.15 (II) (a) and (b), and 1.3 for SDBD No. 7615—Chin's mental state for all other violations was either negligent or, alternatively, "not shown to be intentional or knowing." Our review, however, shows that the Special Master clearly erred in making some of his factual findings as to Chin's mental state. With respect to SDBD No. 7611, the record shows that Chin was aware of opposing counsel's discovery requests and the court-ordered attorney fees awarded against him, yet he failed to respond to the discovery requests or pay the attorney fees as ordered. In SDBD No. 7612, the record shows that Chin transferred proceeds from the sale of the marital property from his trust account to his operating account and made the decision not to disburse any funds owed to his client. In SDBD No. 7613, the record shows that Chin lied to his client by telling him that the conference was cancelled after he failed to attend it. In SDBD No. 7614, the record shows that Chin was aware that the client terminated his representation, yet Chin did not properly withdraw as counsel until

more than two months later. In SDBD No. 7615, the record shows that Chin failed to pay the forensic accountant as ordered by the court and, instead, disbursed the funds for the accountant to himself and, rather than responding to the client's request for her case file and invoices, filed a lien against her for additional fees. In SDBD No. 7703, the record shows that Chin received funds from the sale of the marital property, transferred the funds from his IOLTA account into his operating account, and did not promptly dismiss the divorce action as requested by the client until after he had been terminated. In SDBD No. 7704, the record shows that Chin was aware that he was supposed to provide a draft of the divorce decree to the client before submitting it to the court yet failed to do so. Moreover, Chin was aware that the client later terminated his representation and requested her case file, yet he failed to provide her with the file and, instead, placed a lien on her home. In SDBD No. 7705, the record shows that Chin commingled funds and withdrew for his own use funds owed to his client's ex-husband. Thus, we reject the Special Master's determination that most of Chin's misconduct in these

32

eight disciplinary matters was committed with mere negligence because the record belies that finding and instead agree with the Review Board that the undisputed facts in the record show that Chin acted knowingly in all eight matters.

*Actual or Potential Injury*. The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct," and "potential injury" as "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA Standards, "Definitions."

The Special Master determined that Chin's conduct in all eight matters did not cause any actual injury, and that only a few of his violations had the potential to cause injury. Here, the record and many of the Special Master's factual findings, however, do demonstrate both actual and potential injury to Chin's clients. With respect to SDBD Nos. 7611, 7613, 7614, 7615, 7703, and 7704, the

record shows that the clients had to spend time and money to pursue arbitration in order to obtain a refund from Chin of unearned fees or in order to remove the lien Chin had filed against them. In SDBD Nos. 7613, 7703, and 7704, for example, several of the clients were billed for duplicative work and others were charged for work performed before Chin was retained or after his representation had been terminated. Moreover, several of these clients testified at the evidentiary hearing about the emotional and financial impact of Chin's misconduct, with one client explaining that he "created a lot of stress, worries, fear, and anxiety," another client stating that her experience with Chin left her "emotionally scarred," and a third client testifying that she felt that she hired Chin to do a job and he did "just the opposite." With respect to SDBD No. 7612, the record shows that the client's invoice contained duplicative billing and that the client has yet to receive any of the proceeds from the sale of her marital home, as Chin testified that he has not provided any restitution to this client. Moreover, at the evidentiary hearing, the client in this matter testified that Chin's failure to disburse the

funds took a great toll on her financially, as she had hoped to use the funds to take care of her daughter's expenses. With respect to SDBD No. 7705, the record shows that Chin failed to timely disburse the funds owed to his client's ex-husband, which at the very least had the potential to cause financial injury. Thus, we reject the Special Master's determination that Chin's misconduct did not cause actual injury and agree with the Review Board that Chin's misconduct caused actual injury in most of these cases and potential for injury in the other cases.

*Aggravating and Mitigating Factors.* We agree with the Special Master's determination that the sole mitigating factor in this case is Chin's lack of a prior discipline history, and we note that Chin does not argue that any other mitigating factors are applicable. We also agree with the Special Master that, in aggravation, Chin had a selfish motive, displayed a pattern of misconduct, and committed multiple offenses, and with the Review Board that, based on the record, the vulnerability of the victims and Chin's substantial experience in the practice of law should be considered in

35

aggravation. See *In the Matter of Melnick*, 319 Ga. 730, 738 (5) (905 SE2d 645) (2024) ("[W]hether the facts constitute an aggravating or mitigating factor is a matter we consider de novo."). The evidence is undisputed that these clients were in the midst of divorces and some of the clients were litigating custody issues over their minor children. See *In The Matter of Barksdale*, 318 Ga. 150, 154-155 (897 SE2d 415) (2024) (vulnerability of victim considered in aggravation where client hired attorney to represent her in a contentious modification of child custody action). Further, Chin testified at the evidentiary hearing that he has "substantial experience in the practice of law." In considering these mitigating and aggravating factors, we note that, on balance, the applicable aggravating factors substantially outweigh the fact that Chin had no prior discipline history.

(c)    Appropriate Level of Discipline

To recap, the record in this case establishes that Chin violated Rules 1.2 (a), 1.3, 1.4 (a), 1.5 (a), 1.5 (b), 1.8 (a), 1.8 (b), 1.8 (j), 1.15 (I) (a), 1.15 (I) (c), 1.15 (I) (d), 1.15 (II) (a), 1.15 (II) (b), 1.16 (c), 1.16

36

(d), 3.2, and 8.4 (a) (4) in connection with eight client matters. In our consideration of the factors relevant to assigning discipline we have concluded that Chin violated the duties of diligence, communication, and candor, as well as his duties to avoid conflicts of interest, to safeguard client property, and upon termination of representation. Further, we have determined that the Special Master clearly erred in making the factual findings that Chin acted only negligently and that his actions did not cause actual injury to his clients because those findings were unsupported by the record. We also conclude that the aggravating factors significantly outweigh the sole mitigating factor.

In considering Chin's several violations, the ABA framework, and our previous case law concerning similar violations, we agree with the Review Board that the Special Master's recommendation of an 18-month suspension is insufficient, and that disbarment is the appropriate sanction for Chin's misconduct. See *In the Matter of Proctor*, 313 Ga. 637 (872 SE2d 691) (2022) (disbarring lawyer, who had no prior discipline history, for violating Rules 1.3, 1.4, 1.5 (a),

1.15 (I) (d), 1.16 (d), and 9.3 in connection with three client matters); *In the Matter of Power*, 314 Ga. 504 (877 SE2d 601) (2022) (disbarring lawyer, who had no prior discipline history, for violating Rules 1.2 (a), 1.3, 1.4, 1.5, 1.15 (I), 1.15 (II), 1.15 (III), 1.16 (d) and 9.3 in three client matters). See also ABA Standards 4.11 (disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client); 4.41 (b) (disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client); 4.61 (disbarment is generally appropriate when a lawyer knowingly deceives a client and causes serious injury or potential serious injury to a client).

Accordingly, it is hereby ordered that the name of Justin Allen Chin be removed from the rolls of persons authorized to practice law in the State of Georgia. Chin is reminded of his duties under Bar Rule 4-219 (b).

*Disbarred. Peterson, C.J., Warren, P.J., and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ., concur.*